**Dock BROWN, Plaintiff-Appellant,**

v.

**Charles SMITH, Guard, West Jefferson Correctional Facility and Warden J.D. White, individually, Defendants-Appellees.**

No. 86–7372.
Non-argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 6, 1987.
Rehearing and Rehearing En Banc
Denied May 5, 1987.

Dock Brown, pro se.

Charles A. Graddick, Atty. Gen., Thomas R. Allison, Montgomery, Ala., for defendants-appellees.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Appellant Dock Brown brought this action against Charles Smith, a guard at the West Jefferson Correctional Facility in Alabama, and J.D. White, warden of that facility, pursuant to 42 U.S.C. § 1983. Brown alleged that Smith had physically assaulted him, thus depriving him of his constitutional rights. The district court adopted the magistrate's recommendation and granted summary judgment to both defendants. We affirm.

The dismissal of the complaint against defendant White was proper. Appellant's allegations amount to nothing more than a claim that the warden was vicariously liable for the acts of his subordinates. A § 1983 claim cannot be based upon vicarious liability. *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1504 (11th Cir. 1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Moreover, since Brown acknowledges that

he was permitted to file a grievance against Smith which was investigated by prison authorities, Brown's contention that the warden did not respond to his written complaints is without foundation in the record.

Appellant's complaint against Smith was also properly dismissed. Fairly read, Brown's complaint alleges both that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and that Smith's actions violated the substantive due process guaranteed him by the Fourteenth Amendment. However, the recent Supreme Court case, *Whitley v. Albers,* — U.S. ——, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), has established that the Due Process Clause affords a convicted prisoner no greater protection than the Cruel and Unusual Punishments Clause:

> We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified. It would indeed be surprising if, in the context of forceful prison security measures, "conduct that shocks the conscience" or "afford[s] brutality the cloak of law," and so violates the Fourteenth Amendment, *Rochin v. California,* 342 U.S. 165, 172, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952), were not also punishment "inconsistent with contemporary standards of decency" and " 'repugnant to the conscience of mankind,' " *Estelle v. Gamble,* 429 U.S. [97], at 103, 106, 97 S.Ct. [285], at 290, 292 [50 L.Ed.2d 251 (1976) ], in violation of the Eighth. We only recently reserved the general question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels v. Williams,* 474 U.S. 327, —— n. 3, 106 S.Ct. 662, 667 n. 3, 88 L.Ed.2d 662 (1986). Because this case involves prison inmates rather than pretrial detainees or persons enjoying unrestricted liberty we imply nothing as to the proper answer to that question outside the prison security context by holding, as we do, that in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.

106 S.Ct. at 1088.

■ Under the *Albers* standard, a prison security measure undertaken to resolve a disturbance gives rise to a § 1983 claim only if the measure taken "inflicted unnecessary and wanton pain and suffering" upon the prisoner. *Id.* at 1085. Thus, whether or not a prison guard's application of force is actionable turns upon whether that force was " 'applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

In evaluating the propriety of a prison guard's actions, the Supreme Court suggested several relevant factors which are helpful in resolving this case: the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner. *Albers,* 106 S.Ct. at 1085. Moreover, the analysis must be informed by the wide ranging deference which is to be accorded prison administrators acting to preserve discipline and institutional security. *Id.* (citing *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)). Thus, a prisoner may avoid a directed verdict as in *Albers,* or a summary judgment, as in this case, only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain. Neither the judge nor the jury is free to substitute its own judgment for that of the prison officials.

Consequently, the required deference demands

that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Albers*, 106 S.Ct. at 1085–86.

We next apply the foregoing standard to the facts of this case, keeping in mind the summary judgment posture of the case and the necessity to resolve reasonable inferences in favor of Brown. Our analysis leads us to conclude that summary judgment against Brown was proper.

■■■ It is undisputed that a verbal altercation between Brown and the prison guards occurred during the outdoor recreation period immediately preceding the incident at issue. Nor does Brown contradict guard Smith's assertion that, upon returning from recreation, Brown refused to enter his cell when ordered to do so. Brown resisted Smith's attempt to take his arm and lead him into the cell,[1] precipitating the confrontation between Brown and guard Smith.[2] It is also clear that guard Smith placed his riot baton against Brown's neck with some degree of force, pinned him against a wall, and that another officer

came to assist Smith put Brown back into his cell. Under these circumstances, the use of an appropriate degree of force was justified to compel compliance with a valid order and to accomplish the security interest of putting Brown back into his cell.[3] Thus the first *Albers* factor—the need for the application of force—is satisfied.

With respect to the extent-of-injury factor, guard Smith's affidavit establishes that Brown was taken to the infirmary immediately after the altercation for the purpose of getting a "body chart" and that he was at the infirmary for only 20 minutes. The grievance which Brown filed three days after the incident alleged that officer Smith hit him, but did not complain of any injury. Since Brown's affidavit includes only a most conclusory allegation that his injury was serious, we discount his conclusion that it was serious. We thus conclude that Brown suffered, at most, a minimal injury.

The evidence establishes that guard Smith used some amount of force to accomplish an appropriate security interest—i.e., to get Brown back into his cell—and that, at worst, Brown received minimal injury. Although we cannot pinpoint with precision the amount of force used by guard Smith, the fact that there was no more than minimal injury, that some amount of force was justified under the circumstances, and that the force was used for a legitimate security purpose persuades us that the evidence in this case raises only a "mere dispute over the reasonableness of the particular use of force" and could not support "a reliable inference of wantonness in the infliction of

1. Another factor which *Albers* suggests is relevant to the injury is the fact of "efforts made to temper the severity of a forceful response." 106 S.Ct. at 1085. This attempt by Smith to secure compliance with his lawful order is such a factor.

2. We note that the actual confrontation here implicates institutional security interests and triggers the deference described in *Albers*, 106 S.Ct. at 1085.

3. Brown does assert that he was handcuffed and could not have been a threat to guard Smith. The "extent of the threat to the safety of staff and inmates" is cited by *Albers*, 106 S.Ct. at

1085, as another relevant factor in the analysis. Construing Brown's assertion as something more than a conclusory allegation, there is a genuine issue of fact as to whether Smith was threatened by Brown. Smith's affidavit asserts that Brown, after resisting Smith's initial attempt to lead him into the cell, approached him face to face with a threatening tone of voice. However, whether there was a threat to Smith's safety is not material. We assume for purposes of this decision that Brown did not constitute a threat to Smith's safety. Nonetheless, under the circumstances described in the text, Smith was justified in using an appropriate degree of force to accomplish a legitimate security interest—putting Brown back into his cell.

pain." *Albers,* 106 S.Ct. at 1085–86.[4] Under the *Albers* standard, summary judgment in favor of defendant Smith was appropriate.

For the foregoing reasons, the district court's order granting summary judgment in favor of defendants White and Smith is

AFFIRMED.

---

**4.** Brown's affidavit also contains a conclusory assertion that Smith acted with malice when he placed his riot stick across Brown's throat. A mere conclusory allegation is not sufficient when the actual facts will not support a reliable inference of wantonness.